**George ZITELMAN, et al., Appellants,**

**v.**

**METROPOLITAN INSURANCE AGENCY, Appellee.**

**No. 83–1449.**

District of Columbia Court of Appeals.

Argued June 12, 1984.

Decided Oct. 12, 1984.

**18.** The complaint alleged that as of April 11, 1979, a balance of $9263.77 plus interest and charges was due.

Joshua Kaufman, Washington, D.C., for appellants.

Austin F. Canfield, Jr., Washington, D.C., with whom Terence J. O'Connell, Washington, D.C., was on the brief, for appellee. James Brent Clarke, Jr., Washington, D.C., also entered an appearance for appellee.

Before PRYOR and BELSON, Associate Judges, and PAIR, Associate Judge, Retired.

BELSON, Associate Judge:

George and Harry Zitelman appeal from a summary judgment in favor of Metropolitan Insurance Agency, Inc. (Metro). Because there are genuine issues of material fact, we reverse and remand for further proceedings.

The Zitelmans, general partners in Penn National Limited Partnership, owned Bassins Restaurant on Pennsylvania Avenue, N.W. They leased or sold the restaurant to T.L. General Trading Company and took back secured notes. As one condition of the notes, T.L. General agreed to obtain fire and liability insurance on the building and its contents. T.L. General asked Metro to arrange for a fire policy on the contents of the building. Metro obtained a policy from District of Columbia Property Insurance Facility, known as the Fair Plan. The policy named T.L. General as insured.

The Zitelmans wished to be added to the policy as additional named insureds. They telephoned a Metro employee, Denise Mattingly, and asked her to arrange the change. She undertook to transmit the request to the Fair Plan. The Fair Plan designated the Zitelmans loss payees rather than additional named insureds. The parties agree that, as loss payees, the Zitelmans could have recovered on the policy only if the named insured was entitled to recover; as additional named insureds, they could have recovered in their own right, without regard to whether a fellow named insured could have recovered. *See* 5 R. ANDERSON, COUCH CYCLOPEDIA OF INSURANCE LAW, §§ 29:65–66 (2d ed. 1960).

Two or three months after the Fair Plan denied the request, a fire damaged the contents of the restaurant. The Fair Plan asserted that T.L. General had set the fire and so denied T.L. General's claim under the contents policy. Because the Zitelmans were loss payees and so could recover only if T.L. General, the named insured, could recover, the Fair Plan also refused to pay the Zitelmans.

The Zitelmans sued the Fair Plan and Metro. The Fair Plan settled. In support of their claim against Metro, the Zitelmans argued that Metro had become their agent when, at their request, its employee, Denise Mattingly, undertook to arrange for them to be added as named insureds. They alleged that she assumed a duty to perform the task or notify them that she had not done so, but had failed to fulfill this duty. The Zitelmans demanded $75,000 in damages, the amount they would have recovered had they been additional named insureds.[1]

Trial proceeded before Judge McArdle. After the parties had offered exhibits and presented some testimony, Judge McArdle declared a mistrial, for reasons not relevant here. The case was reassigned to Judge Thompson. Judge Thompson heard and granted Metro's subsequent motion for summary judgment. That is the decision on appeal.

---

1. The Zitelmans' complaint appears to sound in tort: it alleges that Metro breached a duty of care and that Metro's negligence caused the plaintiffs' damages. The action against an insurance agent for breach of duty can sound in either tort or contract. *Adkins & Ainley, Inc. v. Busada,* 270 A.2d 135, 137 n. 1 (D.C.1970).

Summary judgment was proper if, on the record before Judge Thompson,[2] there was no genuine issue of material fact and Metro was entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c). As the movant, Metro had the burden of demonstrating the absence of material factual dispute; the facts had to be construed in a light most favorable to the nonmoving parties, the Zitelmans. *Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980).

Metro's arguments before Judge Thompson and before this court fall into two groups. First, Metro argues that it owed no duty to the Zitelmans; second, Metro contends that it fulfilled any duties it owed. We consider each set of arguments in turn.

Metro makes two arguments in support of its contention that it owed no duty to the Zitelmans. First, Metro argues that any attempted agency agreement failed for lack of consideration. The Zitelmans did not pay anyone at Metro for the requested services; nor did they give up any legal right or provide any other sort of consideration.

■ Consideration was not necessary, however, to bind Metro to an agency agreement. "[I]f any person undertakes, even wholly without consideration, to procure insurance and actually takes steps in the matter, he is responsible for misfeasance." 4 J.A. APPLEMAN AND J. APPELMAN, INSURANCE LAW AND PRACTICE § 2261, at 181 (rev. ed. 1969); 3 R. ANDERSON, COUCH CYCLOPEDIA OF INSURANCE LAW, *supra*, § 25:33, at 331–32. *See Remeikis v. Boss & Phelps, Inc.*, 419 A.2d 986, 991 (D.C.1980) (one who undertakes to act, even though gratuitously, may be subject to the duty to act with reasonable care). "[A]n insurance broker who undertakes to procure insurance for another and through fault or neglect fails to do so is liable for damages thereby resulting." *Adkins & Ainley, Inc. v. Busada, supra*, 270 A.2d at 136–37 (quoting

*Shea v. Jackson*, 245 A.2d 120, 121 (D.C. 1968)).

There is no doubt that Mattingly undertook to do what the Zitelmans requested and took steps in the matter: documents in the record show that she asked the Fair Plan to add the Zitelmans as named insureds on the contents policy. It is undisputed that Mattingly acted within the scope of her employment, so Metro is responsible for her actions. *See Penn Central Transportation Co. v. Reddick*, 398 A.2d 27, 29 (D.C.1979). Thus, she and her employer, Metro, became the Zitelmans' agent despite the lack of consideration.

■ Metro's second argument is that it could not have had a duty to ensure that the Zitelmans were added as named insureds because such a duty was impossible to perform. Fire insurance, they contend, is difficult to obtain in the District of Columbia, and the Zitelmans never showed that the Fair Plan or any other company could have or would have added them as named insureds. An agent cannot promise to do something that is impossible, Metro reasons, so no promise or agency could have existed in this case.

The flaw in this argument is that Metro, as the movant for summary judgment, had the burden of establishing that the undisputed facts supported its contention. The Zitelmans were not obliged to prove that obtaining the policy they wanted was possible; Metro was obliged to prove that obtaining it was impossible. Metro asserted during the summary judgment hearing that it had supported the impossibility argument in its memorandum in support of the summary judgment motion. The support it pointed to, however, consisted merely of statements that Metro does not control the Fair Plan's policy-writing decisions. That fact shows that Metro could not have forced the Fair Plan to add the names, but it is irrelevant to the question whether the Fair Plan itself could or would have written the policy as the Zitelmans asked. The

**2.** This did not consist of all the exhibits and testimony that were before Judge McArdle.

evidence of record does not answer that question conclusively, so Metro's argument must fail.

Metro's other general contention is that, assuming it was the Zitelmans' agent, it fulfilled its duties. It so argues on a record almost entirely devoid of details about what Mattingly and George Zitelman agreed when he telephoned her. We do not know, for example, whether she merely promised to try to have the brothers' names added to the policy, whether she said she would notify him when she had done that or when she found she could not do it, or whether she gave him any other specifics about how she would fulfill her duties.

Metro makes three arguments in support of its contention that it fulfilled any duties it had. Metro contends first that, because the Fair Plan, rather than Metro, wrote the Zitelmans' policy, Mattingly herself could not have added the Zitelmans' names to the policy; therefore she must have had only a duty to transmit the Zitelmans' request to the Fair Plan. She did transmit the request, and so, Metro concludes, she fulfilled any duties of Metro as agent. We must reject this argument because of the void in the record. The scope of Mattingly's agency is an unsettled issue of fact. For example, she might have promised, and might therefore have had a duty, to notify the Zitelmans if the Fair Plan rejected the request she transmitted.

Metro's second argument is that the company fulfilled its agency agreement because Mattingly was charged with having the Zitelmans added as loss payees rather than as named insureds. Metro bases this contention on Mattingly's testimony before Judge McArdle that the Zitelmans' lawyer telephoned her, about a month after George Zitelman did, and asked her to arrange to have the Zitelmans made loss payees.

Again we cannot accept Metro's contention because of the factual dispute, on this record, as to what the Zitelmans' attorney requested. The only record evidence of the terms of his request is found in excerpts of Mattingly's trial testimony. Mattingly had been working at Metro for less than a month when the lawyer called. At trial she read aloud a memorandum in which she had jotted down the contents of the telephone conversation. The memorandum, the original of which is not in our record, said in relevant part, "Zeitelman's [sic] attorney telephoned. Message: Wants $200,-000 fire coverage on contents, $250/500–50,000 PDO liability loss payee-Pen [sic] National." From its face the memorandum appears to note a request that Penn National, the Zitelmans' partnership, be added as loss payee on a liability policy rather than on the contents policy. Ms. Mattingly testified that she had understood the loss-payee request to refer to the contents policy. She also testified, however, that she had not understood what the attorney was asking her to do. The document that she testified she sent the lawyer in response to his request that they be made loss payees was a certificate of insurance that purported instead to make them "additional named insureds."

Mattingly may have misunderstood the lawyer, or when testifying she may have failed to recall his instructions correctly. In short, the record is not clear on what the Zitelmans' attorney asked Mattingly to do.

Metro's final argument is that Metro fulfilled any duty it could have had to the Zitelmans because it notified them, two and one-half months before the fire, that they were loss payees on the policy. Metro asserts that it sent the Zitelmans a document called a "change endorsement" that made their status clear. The change endorsement stated in large letters, "LOSS PAYABLE CLAUSE IS HEREBY ADDED TO POLICY" and referred to the contents policy by number. Thus, the Zitelmans knew, in ample time to adjust the coverage, says Metro, that they had not been added to the contents policy as named insureds. Any damages they suffered were due to their own failure to change the policy after they

received this notice, and not to any lapse on Metro's part.

This argument turns on the question whether the Zitelmans received the change endorsement form. After a close reading of the record, we have determined that the evidence conflicts as to whether they received it.

Mattingly testified before Judge McArdle that she sent the change endorsement form, along with an explanatory memorandum, to T.L. General's lawyer. T.L. General's lawyer then sent a letter to the Zitelmans' lawyer. In that letter, T.L. General's lawyer told the Zitelmans' lawyer that he was enclosing "certificates of insurance and change of endorsement forms relating to insurance coverage." T.L. General's lawyer's description of the forms relating to the contents policy, however, leaves it unclear whether he enclosed the change endorsement form that set out the loss payable clause. The letter states, "The enclosed documentation establishes that ... the content coverage has been increased to $150,000.00 and Penn National Limited Partnership [the Zitelmans' partnership] is named as co-insured." The fact that the lawyer does not mention the loss payable change endorsement form casts some doubt on Mattingly's statement that she sent him that form.

Thus, we cannot say on this record that it is undisputed that the Zitelmans themselves or even their lawyer received the change endorsement. The only documents that the record shows they received were the T.L. General lawyer's letter, a form that increased the amount of the contents insurance by $75,000, to $150,000 total,[3] and the certificate of insurance discussed above. A change endorsement was not among the documents shown to have been received. None of those received even mentions a change to loss-payee status.

Metro did not succeed in showing that the Zitelmans received notice that they had been added as loss payees. Accordingly, we must reject Metro's third basis for arguing that, as a matter of law, Metro fulfilled any duties it may have had as the Zitelmans' agent.

In sum, then, Metro has argued, first, that as a matter of law it owed no duty to the Zitelmans, and, second, that even if it owed a duty, it fulfilled the duty. We reject the first argument because the facts adduced on the motion for summary judgment made clear that Metro's employee undertook to act as an agent for the Zitelmans. There are, at the same time, unresolved issues of fact concerning the scope of the agency. Moreover, Metro failed to establish on this record that it was impossible for Metro to perform its duties as the Zitelmans described them. The second argument fails because of disputes of fact as to whether Metro fulfilled its duty. Accordingly, on the record before the trial court, summary judgment was inappropriate.

*Reversed and remanded for further proceedings consistent with this opinion.*

---

**3.** This document has a column labeled "Per Cent of Co-Insurance Applicable" and gives a figure, under that heading, of 80%. This may be the co-insurance provision to which T.L. General's lawyer referred in his letter. The fact that Mr. Zitelman remembered receiving this document, but not the loss payable change endorsement, supports an inference that T.L. General's lawyer received from Mattingly and transmitted the co-insurance document but not the change endorsement. There is a factual dispute in this regard.