**Sharon Currie SCOTT, Appellant,**

v.

**DISTRICT OF COLUMBIA, et al., Appellees.**

No. 84–136.

District of Columbia Court of Appeals.
Argued March 13, 1985.
Decided June 6, 1985.

Michael M. Ain, Rockville, Md., for appellant.

William J. Earl, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before NEBEKER and MACK, Associate Judges, and GALLAGHER, Associate Judge, Retired.

NEBEKER, Associate Judge:

Two issues are presented on this appeal: (1) whether the trial court erred when it granted summary judgment for the District of Columbia and Metropolitan Police Officer Patrick Benton on appellant Sharon Currie Scott's claim of false arrest and imprisonment, and (2) whether in her amended complaint appellant sufficiently

---

**1.** WALES lists all active warrants on file in the Superior Court's warrant office.

**2.** It appears from the record that Sharon Carrie Scott and Sharon Currie Scott are the same person and that the discrepancy in the spelling of the middle name results from a typographical error in the underlying records.

stated a claim of negligence against the District of Columbia to pursue that claim. Finding no error, we affirm.

## I

Officer Benton arrested appellant on August 12, 1980, based on information maintained on the Washington Area Law Enforcement System (WALES) computer. The undisputed facts surrounding the arrest of appellant and underlying the trial court's summary judgment can be briefly summarized.

On July 9, 1980, the Sheriff's Department of Prince Georges County, Maryland, requested that the Metropolitan Police Department serve a Maryland bench warrant for Sharon Christine Scott. On August 7, 1980, the Superior Court of the District of Columbia accordingly issued an arrest warrant naming Sharon Christine Scott of 1129 4th Street, N.E., Washington, D.C., as the person to be arrested. However, when the chief clerk of the Criminal Warrant Branch of the Superior Court entered the warrant into WALES,[1] the resulting printout identified Sharon Carrie Scott of 4806 Hayes Street, N.E., as the individual to be arrested.[2]

On August 12, 1980, Officer Benton and his partner selected the fugitive warrant naming Sharon Carrie Scott from the WALES computer for service on that day. The officers placed the name and date of birth back into WALES for verification, and the computer fed back identical information, drawn from operator's permit records maintained by the District of Columbia Bureau of Motor Vehicles Services. No police department identification number (PDID) was listed; the absence of any PDID number meant that no photograph of the fugitive was on file.[3]

---

**3.** The height and weight of Sharon Christine Scott and Sharon Currie Scott are different. One woman is 5′6″ tall and, at the time of the occurrence, weighed 130 pounds; the other is 5′2″ tall and weighed 250 pounds. Height and weight information, however, were not given on the printout.

Based on information from the WALES computer, Officers Benton and Wheeler went to the first address listed on the printout, 4806 Hayes Street, N.E.[4] At that address, the officers found appellant, whose name and birth date corresponded to the printout listing. At the time of the arrest, appellant protested that a mistake was being made, but she acknowledged that she had recently had some problems with paying tickets in Prince Georges County. After the arrest, appellant was taken to the Sixth District headquarters for processing. During processing, another police officer came to suspect that she was not the person for whom the warrant was intended. She was held, however, until late afternoon when the normal processing activities were completed. She was released on her personal recognizance. Appellant subsequently appeared in Prince Georges County, and was determined not to be the individual sought in the fugitive warrant.

## II

On June 30, 1981, appellant filed a civil complaint against the District of Columbia and a Theo J. Bartholomew, alleging false arrest, false imprisonment, and negligence. She later amended her complaint by substituting the name of Officer Benton for that of Theo J. Bartholomew. In her complaint appellant alleged that she had been arrested and detained by police officers without legal justification or cause, and that the District of Columbia was liable for Officer Benton's actions on a theory of *respondeat superior.*

After appellees filed answers and after discovery, the parties filed cross motions for summary judgment. In her opposition to appellees' motion for summary judgment, appellant asserted that there were disputed issues of fact, that her arrest was not undertaken reasonably or in good faith, and that the duration of her detention was improper. However, she filed no statement

of material facts as to which genuine dispute existed. *See Kron v. Young & Simon, Inc.,* 265 A.2d 293, 295 (D.C.1970) (party must file appropriate statement to assert existence of genuine issue of material fact in conjunction with opposition to motion for summary judgment). Based on the facts previously stipulated by the parties and on the evidence adduced at the hearing held on the cross motions, the trial judge concluded that Officer Benton's actions were justified as a matter of law, given the information available to him at the time of the arrest. He further concluded that no basis existed for the claim against the District of Columbia because its liability was totally predicated upon the actions of Officer Benton. Accordingly, he ordered summary judgment in favor of appellees. We perceive no error.

Summary judgment was proper if, on the record before the trial judge, there was no genuine issue of material fact and the District of Columbia and Officer Benton were entitled to a judgment as a matter of law. Super.Ct.Civ.R. 56(c); *see Zitelman v. Metropolitan Insurance Agency,* 482 A.2d 426, 428 (D.C.1984). We have reviewed the record and find no error in the trial judge's conclusion that there was no genuine issue of material fact. Furthermore, his application of the law was not erroneous.

▮ In actions for false arrest and false imprisonment, the central issue is "whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged and the action fails." *Dellums v. Powell,* 184 U.S.App.D.C. 275, 283, 566 F.2d 167, 175 (1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). An officer can justify his conduct upon a showing that he used only reasonable force to maintain the arrest and that he made the arrest in good faith and with probable cause. *Wade v. District of Columbia,* 310 A.2d 857, 862 (D.C.1973) (en banc). "[T]o

---

**4.** The WALES printout listed 1129 4th Street, N.E., the address of the individual actually named in the Maryland and Superior Court warrants, as a possible alternative location of the fugitive.

prevail the police officer need not allege and prove probable cause in the constitutional sense.... [Rather] the officer must allege and prove not only that he believed, in good faith, that his conduct was lawful, but also that his belief was reasonable." *Id.* (citing *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 456 F.2d 1339, 1348 (2d Cir.1972)); *see Woodward v. District of Columbia*, 387 A.2d 726, 727 (D.C.1978).

▮ Unlike the WALES printout sheet in *Woodward, supra*, which gave notice of the warrant's invalidity, the printout here revealed no facial irregularity. Where a WALES printout on its face reflects a validity issued warrant, a police officer has a good faith reasonable basis to arrest the person who factually corresponds to the information given on the WALES printout. *See Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971) (police officer is entitled to act in reliance on the fact that a warrant exists without actually examining it); *cf. United States v. Hensley*, —— U.S. ——, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (*Terry* stop lawful because reasonable when based on correspondence of detainee to description in "wanted flyer"). Appellant matched the information given on the printout in all particulars it provided—name, address, date of birth, and description of the fugitive as to race and sex. After going to the first address given on the printout, the officers were directed to appellant by her mother after they asked for her by name. Appellant gave her birth date to the officers in response to their query. Appellant's protests gave Officer Benton no factual basis for questioning the

accuracy of a computer system regularly relied upon by law enforcement officers throughout the metropolitan area. We agree with the trial court that the police officers met their burden of demonstrating good faith, reasonable behavior.[5] *Hill v. California*, 401 U.S. 797, 804, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971) (cited in *Sanders v. United States*, 339 A.2d 373, 378–79 (D.C.1975) (holding that, to determine validity of arrest in criminal case where admissibility of evidence is at issue, "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest")).

▮ Appellant's case against the District of Columbia is based on a theory of false arrest and false imprisonment by the arresting officers. Under the doctrine of *respondeat superior*, the District is liable for the intentional torts of its employees acting within the scope of employment. *Wade v. District of Columbia, supra*, 310 A.2d at 863. Because summary judgment for Officer Benton as to appellant's arrest was not erroneous, neither was summary judgment for the District.

▮ Appellant also argues that, even if her initial arrest was based on probable cause, the District of Columbia is liable for unreasonably continuing her confinement after an unidentified police officer voiced his suspicion that a mistake had been made. We disagree. Appellant had been arrested pursuant to a valid warrant issued by the court. We cannot say that it was unreasonable for the police to complete her processing before any further action was

---

**5.** We note that in reaching his conclusions, the trial judge relied in part on *Hubbard v. District of Columbia*, No. 80–1427, decided Feb. 10, 1982, an unpublished Memorandum Opinion and Judgment of this court. Under Rule IX of this court's Internal Operating Procedures, unpublished decisions may not be cited to the court by counsel. When, however, an unpublished decision is directly relevant, there is nothing improper in a trial court's being guided by it, as the trial judge was here. *See* Internal

Operating Procedures, Nebeker, J., and Harris, J., concurring in partial dissent:

> While a no citation rule bars citation, it will not prevent counsel from attempting to determine why the court reached a particular result and then using that reasoning in another case. Moreover, "it will not prevent wise counsel from attempting to insinuate its existence and its persuasive force."

*Id.* at 4 (citing P. CARRINGTON, D. MEADOR, M. ROSENBERG, JUSTICE ON APPEAL 37–39 (West 1976)).

taken, particularly where—as here—appellant does not contend that there was any intentional or unnecessary delay in the processing.

### III

Appellant contends that her complaint adequately alleged negligence against the District, so that even if the claim against Officer Benton fails, the claim against the District on general negligence survives. We do not agree. Although appellant's complaint was captioned as including claims of false arrest, false imprisonment, and negligence, the complaint only contains specific allegations relevant to the first two claims. Even when she amended her complaint to substitute Officer Benton for Theo J. Bartholomew, she made no change in the allegations of the complaint.

Under Super.Ct.Civ.R. 8(a) and (e), a complaint is sufficient so long as it fairly puts the defendant on notice of the claim against him. *See Autocamp Inc. v. Publishing Computer Service, Inc.*, 331 A.2d 338, 340 (D.C.1975). It is not error, however, for a trial judge to limit his consideration to issues unequivocally raised by the complaint. *Id.*

Here the trial court was troubled, as we are troubled, by the fact that appellant was victimized by an ostensible error that led to her arrest.[6] The complaint, however, based the District's liability solely upon the behavior of Officer Benton and his alleged negligence. All parties stipulated to the affidavit of Mrs. Claudia Russo, Chief Clerk of Superior Court's Criminal Warrant Branch. Mrs. Russo stated that she had typed the name Sharon Christine Scott and that person's birth date, November 6, 1957, to begin the process of entering the fugitive warrant into WALES.[7] Mrs. Russo stated that she had been trained in the use of WALES, had worked with WALES for the seven years since its inception, and had entered "hundreds of criminal warrants into the WALES system."[8] Neither in her amended complaint nor at her hearing did appellant raise the issue of a computer tort. *See generally* S.H. NYCUM, *Torts and Crime* in COMPUTERS AND THE LAW 221 (R.P. Bigelow ed. 1981). She never alleged that Mrs. Russo was negligent nor that the WALES system was faulty, but instead based her claim on the behavior of Officer Benton in enforcing the warrant. That being the case, the District did not have sufficient notice within the period of limitations of the claim against which it would have to defend. *See* Super.Ct.Civ.R. 8(f).

*Affirmed.*

---

6. We trust that the government will take all necessary steps to minimize the likelihood of such computer errors.

7. In fact, the record includes a printout on which the top line is the name Sharon Christine Scott and the date 11/06/57.

8. Mrs. Russo explained the method by which WALES operates as follows:

   Routinely and upon command, WALES will select from its record identification files any similar names that have been previously entered. In this instance from the operator's permit record file the names of Sharon Carrie Scott and Sharon Currie Scott were selected.... A fugitive warrant (U.S. 937–80) seeking Sharon Christine Scott under the record file name of Sharon Carrie Scott, 4806 Hayes Street, N.E., date of birth December 20, 1957, was created. It often happens that a particular individual sought in the warrant (paper source document) has previously been entered into the WALES computer. If the information contained on the warrant is substantially identical to that information already contained in WALES (for example, identical name and birthdate) the information already in WALES will be used to format the warrant and supplemental information contained on the paper warrant will be added in the "ID Comments" section. In this case the address, 1129 4th Street, N.E. (listed on the warrant) was added to supplement the information already in the computer.

   Record at 56–57.