**WALLING, Administrator, Wage and Hour Division, U. S. Dept. of Labor, v. MOORE MILLING CO., Inc.**

No. 241.

District Court, W. D. Virginia, at Roanoke.
July 25, 1945.

Lemuel H. Davis, Regional Atty., and William R. Allcott, Senior Atty., U. S. Department of Labor, both of Richmond, Va. (Douglas B. Maggs, Solicitor of Labor, and Archibald Cox, Associate Solicitor of Labor, U. S. Department of Labor, both of Washington, D. C., on the brief), for plaintiff.

Frank G. Davidson, Jr., of Lynchburg, Va., for defendant.

BARKSDALE, District Judge.

On April 23, 1945, the plaintiff, L. Metcalfe Walling, Administrator of the Wage

and Hour Division of the Department of Labor, filed his complaint against Moore Milling Company, Inc., alleging that defendant, a resident of this District, was engaged in the production, sale and distribution of flour, meal, and similar products, in interstate commerce, was subject to the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and had violated the provisions thereof as to wages and hours of labor in its employment of three of its employees. In the complaint, plaintiff prayed for a preliminary and permanent injunction. Plaintiff filed an affidavit supporting the allegations of his complaint, and upon plaintiff's motion, I entered an order requiring the defendant to show cause why a preliminary injunction should not issue restraining it from further violations of the Act. On the return day of the show cause order, a hearing was had, and defendant moved to quash the order to show cause, upon the ground that such a procedure was not sanctioned by the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. This motion was overruled, and evidence was introduced both in support of and against plaintiff's motion for a preliminary injunction.

At the conclusion of the testimony, brief arguments of counsel were heard. The respective contentions of counsel raised three questions for determination:

(1) Was the entry of an order to show cause a proper procedure?

(2) Were the three employees in question employed in a bona fide executive capacity under Section 13(a) of the Act and Section 541.1 of the Regulation promulgated by the Administrator defining the meaning of "bona fide executive * * * capacity", as used in the Act?

(3) Whether or not the three employees in question were employed in violation of the Act, if the court should find that they were not employed in a bona fide executive capacity.

Both parties asked for leave to file briefs, and having now maturely considered the evidence and the briefs filed, I set forth my findings of fact and conclusions of law, as required by Rule 52(a), as follows:

### Findings of Fact.

It is conceded, and I find as a fact, that the defendant and its employees in question were engaged in interstate commerce.

The employees in question were Rosa B. Williams, Rufus Boles, and Rufus Altice.

Miss Williams was secretary of the corporation, and received $30 a week as compensation. She customarily worked a maximum of 54 hours a week, that is, she went to work at 8 a.m., took an hour off for lunch, and quit at 6 p.m. every day, except Saturday, when she quit at noon if she had finished her work. If she had not, she stayed until she had finished her work, or until 6 p.m. The president of the defendant corporation, Mr. Moore, was in general charge of all defendant's operations. Under his supervision, Miss Williams was in general charge of the defendant's office, and in complete charge whenever Mr. Moore was absent. There were four other employees in the office over whom Miss Williams exercised supervision and direction. Although she did not sign checks, she wrote all checks, paid all invoices and filed them away, she bought all office supplies, made the bills of lading, filed all claims for shortages on trains and cars, kept the general ledger, answered the telephone when the operator was absent, and waited on the trade when called upon. She attended to some of the correspondence on her own initiative, looked after gasoline coupons for the trucks, and obtained the necessary feed stamps. She estimated that her work on the general ledger would not take over 15% of her time, "or not over 20 anyway". She had the authority to hire and fire other employees, or certainly her suggestions and recommendations as to hiring and firing were given particular weight.

The duties of Rufus Boles and Rufus Altice were similar. Boles was assistant superintendent of the mill, his duties being primarily those of a shipping clerk or head of the shipping department, during the day time, and Altice was shipping clerk or head of the shipping department, at night. Both worked a maximum of 63 hours a week, and both were paid, first, $40, and then $45, a week. Boles had under his control and direction from six to eleven men who actually loaded the trucks and cars; Altice had from two to five. Both had the right to hire and fire such employees. Both were in entire charge of the shipping department while they were at work. The invoices or bills were prepared in the office and turned over to these employees. They then became accountable and responsible for the shipment of the merchandise as billed. It was their duty, and within their discretion, to determine what should constitute the loads of the respective trucks, to see that they were properly loaded, and go over the bills

or invoices with the drivers and instruct them as to the routes to be taken and the order of delivery of the merchandise. It was also their duty to procure from the milling department the merchandise which was billed out, and to see that such merchandise as was not on hand was produced by the milling department in time to be promptly shipped out. Both these employees occasionally helped in an emergency with the actual loading, but neither worked as much as 20% of his time as a loader or driver.

The terms of employment of Miss Williams and Altice prior to May 17th were set out in a letter dated May 10, 1945, to each employee, and agreed to by each, which are as follows:

"Salem, Virginia
"May 10, 1945

"Miss Rosa B. Williams
"Salem, Virginia

"Dear Miss Williams:

"As some question has been raised by the Wage and Hour Division of the United States Department of Labor as to your contract of employment with the Moore Milling Company, Inc. since May 1, 1943, we are setting forth herein what we understand to be the terms of the contract under which you were employed by us on May 1, 1943, and which contract has continued in force until the present time.

"You were employed to work 54 hours per week at a salary of $30.00 per week, said salary of $30.00 per week to be your total compensation for 54 hours work and no additional compensation was to be paid you for any week in which you did not work in excess of 54 hours, and the sum of $30.00 is a minimum guaranteed weekly salary.

"Will you please sign the original of this letter and return same to us in order to evidence the fact that you worked on the above basis from May 1, 1943 until the present time. The extra copy of the enclosed letter is your copy of the contract of employment.

"Thanking you for your attention to this matter, we are
"Very truly yours,
"Moore Milling Company, Inc.
"By [s] R. A. Moore,
Its President."

"May 10, 1945.

"Receipt of the above letter is hereby acknowledged by the undersigned and the terms therein set out are the terms of the contract under which I was employed by Moore Milling Company, Inc., on, to-wit, May 1, 1943.

[s] Rosa B. Williams."

"Salem, Virginia
"May 10, 1945.

"Mr. Rufus Altice
"Salem, Virginia

"Dear Sir:

"As some question has been raised by the Wage and Hour Division of the United States Department of Labor as to the terms of the contract by which you were employed by Moore Milling Company, Inc. on September 8, 1944, we are setting forth in this letter what we understand to be the terms of said contract and which contract has continued in force until the present time.

"You were employed to work 63 hours per week at a salary of $45.00 per week, said salary of $45.00 to be your total compensation for 63 hours work and no additional compensation was to be paid you for any week in which you did not work in excess of 63 hours, and that the sum of $45.00 was a guaranteed minimum weekly salary.

"Will you please sign the original of this letter and return same to us in order to evidence the fact that the terms of your contract of employment of September 8, 1944, and which contract of employment has continued in force until the present time, are correctly set forth in this letter. The extra copy of the enclosed letter is your copy of the contract of employment.

"Thanking you for your attention to this matter, we are
"Very truly yours,
"Moore Milling Company, Inc.
"By [s] R. A. Moore."

"May 10, 1945.
"Receipt of the above letter is hereby acknowledged by the undersigned and it is hereby agreed that the terms of the contract of employment of September 8, 1944 are correctly set forth in said letter.
"[s] R. H. Altice."

A new arrangement was entered into on May 17, 1945, as shown by the following letters to Miss Williams and Altice dated May 17, 1945, and agreed to by each, and which are as follows:

"Salem, Virginia
"May 17, 1945·

"Miss Rosa B. Williams
"Salem, Virginia

"Dear Miss Williams:

"As some question has been raised by the Wage and Hour Division of the United States Department of Labor as to the method in which you are paid, and as the Company desires to have its contract of employment with you conform in all respects to the requirements of the Wage and Hour Law, this is to advise that all prior contracts of employment, whether oral or written, which the Company has with you are hereby terminated and from and after this date your basic rate of pay will be 49-1/4¢ per hour for the first 40 hours which you work each week, and that for time over 40 hours each week you will receive for each hour of work not less than one and one-half times such basic rate above mentioned, with a guaranty on our part that you will receive weekly, for regular time and for such overtime as the necessities may demand, a sum not less than $30.00.

"Will you please sign the original of this letter and return same to us in order to evidence the fact that the contract of employment as hereinbefore set out is agreeable to you. The extra copy of the enclosed letter is your copy of the contract of employment.

"Thanking you for your attention to this matter, we are
"Very truly yours,
"Moore Milling Company, Inc.
"By [s] R. A. Moore
"Its President."

"May 17, 1945

"Receipt of the above letter is hereby acknowledged by the undersigned and the terms of employment as herein set out are hereby agreed to and accepted.
"[s] Rosa B. Williams."

"Salem, Virginia
"May 17, 1945

"Mr. Rufus Altice
"Salem, Virginia

"Dear Mr. Altice:

"As some question has been raised by the Wage and Hour Division of the United States Department of Labor as to the method in which you are paid, and as the Company desires to have its contract of employment with you conform in all respects to the requirements of the Wage and Hour Law, this is to advise that all prior contracts of employment, whether oral or written, which the Company has with you are hereby terminated and from and after this date your basic rate of pay will be 60-1/4¢ per hour for the first 40 hours which you work each week, and that for time over 40 hours each week you will receive for each hour of work not less than one and one-half times such basic rate above mentioned, with a guaranty on our part that you will receive weekly, for regular time and for such overtime as the necessities may demand, a sum not less than $45.00.

"Will you please sign the original of this letter and return same to us in order to evidence the fact that the contract of employment as hereinbefore set out is agreeable to you. The extra copy of the enclosed letter is your copy of the contract of employment.

"Thanking you for your attention to this matter, we are
"Very truly yours,
"Moore Milling Company, Inc.
"By [s] R. A. Moore
"Its President."

"May 17, 1945.

"Receipt of the above letter is hereby acknowledged by the undersigned and the terms of employment as herein set out are hereby agreed to and accepted.
"[s] R. H. Altice."

Boles relinquished his position as shipping clerk some two or three weeks before the hearing, and became a truck driver for defendant. The terms of his employment were never set out in writing, but the evidence indicates that the terms of his employment were similar to those of Altice.

None of these employees was ever employed for a longer work week than the maximum hereinbefore set out, and there was no agreement between these employees and the defendant that they might be required to work any longer hours.

Conclusions of Law.

First, I conclude that the defendant and the employees in question were subject to the provisions of the Act.

Upon the question of whether or not it was proper to bring plaintiff's motion for a preliminary injunction to a hearing upon an order to show cause, upon consideration I am satisfied that such a procedure was improper. I overruled defendant's motion to quash the order to show cause, and

382

I think such motion was properly overruled because the service upon defendant of the order to show cause, accompanied by a copy of the complaint and supporting affidavit, took the place of notice to defendant that a motion would be made for a preliminary injunction against it at the time and place stated in the order to show cause, and defendant was in no wise prejudiced by this unusual procedure.

■ However, I do not think that I should have adopted the procedure of substituting an order to show cause in place of the procedure set out in the Federal Rules of Civil Procedure in Rules 7(b) and 65. These Rules are perfectly clear, and set out the standard procedure for bringing on for hearing a motion for a preliminary injunction. I can see no useful purpose to be served by deviating from this standard procedure. In legal effect, I do not see where either the plaintiff or the defendant is helped or hindered by the entry of an order to show cause. However, from a practical standpoint, the procedure by way of a show cause order imposes upon the plaintiff the additional burden of appearing before the court with his motion for a show cause order; it also imposes upon the court the burden of hearing the motion for a show cause order and determining from the complaint and supporting affidavit, if such be filed, whether or not a prima facie case for an injunction is made out. In my opinion, no useful purpose is accomplished thereby. A plaintiff, who desires a preliminary injunction, need only give his notice of such motion, as provided in the Rules.

The only authority cited to me on the subject is United States v. Rollnick, D.C., 33 F.Supp. 863. Although this case was not an injunction case, the following observation made therein is pertinent here (33 F. Supp. at page 865): "Furthermore, with regard to the rule to show cause, since the effective date of the New Rules of Civil Procedure, rules to show cause have not been properly a part of civil practice. Rule 7(b) provides that all applications to the Court for orders shall be by motion. The rules and forms then clearly indicate that motions are brought before the court by means of 'notice of motion' which serves the purpose of a rule to show cause, and obviates the necessity for obtaining such a rule."

It is therefore my conclusion that, although defendant has not been prejudiced and therefore the issuance of the rule to show cause against it was harmless error, nevertheless, the entry of the rule to show cause was improper, and plaintiff's motion for a preliminary injunction should have been brought to a hearing in the manner prescribed by the Rules of Civil Procedure.

*Were the defendant's employees, Williams, Boles and Altice, employed in a "bona fide executive * * * capacity"?*

■ Numerous cases have been cited by counsel declaring the general principles applicable to this determination: for instance, that the Act is beneficent in character and should be liberally construed in order to confer its benefits upon employees, Ralph Knight, Inc., v. Mantel, 8 Cir., 135 F.2d 514, that the regulation of the Administrator defining the meaning of "employee employed in a bona fide executive * * * capacity", has the force of law, Walling v. Yeakley, 10 Cir., 140 F.2d 830, 831, that the six qualifications set out in the Regulation as necessary to qualify an employee as an executive are in the conjunctive, and all six must be found present to determine that the employee is an executive, Fanelli v. United States Gypsum Co., 2 Cir., 141 F. 2d 216, Helliwell v. Haberman, 2 Cir., 140 F.2d 833, that the title given to an employee, or the designation given to his employment, is not conclusive, but that the actual duties which he performs, and all the circumstances of his employment, must be looked to in order to determine whether or not he is an executive. George Lawley & Son Corporation v. South, 1 Cir., 140 F.2d 439.

■ These principles are well established, and admitted by counsel for both parties. But assuming these principles to be applicable, counsel do differ sharply as to how the Regulation should be applied to the three employees here involved. Applying the Regulation, fairly construed, to the employees here in question, the conclusion seems to me inescapable that each of the three employees in question was employed in a bona fide executive capacity:

(A) The primary duty of each consisted of the management of a customarily recognized department of defendant's business. It was the primary duty of Miss Williams to manage the office, the primary duty of Boles to manage the shipping department in the day time, and the primary duty of Altice to manage the shipping department in the night time. The office and shipping department were customarily recognized departments of defendant's business.

(B) All three customarily and regularly directed the work of other employees within their departments.

(C) All three had the authority to hire or fire other employees, or certainly their suggestions and recommendations as to hiring and firing were given particular weight.

(D) All three customarily and regularly exercised discretionary powers.

(E) All three were compensated on a salary basis at not less than $30 per week.

(F) None of the three employees here in question performed work of the same nature as that performed by nonexempt employees, as much as 20% of the number of hours they worked.

It is therefore my conclusion that Miss Williams, Boles and Altice were all employees employed in a bona fide executive capacity, and not subject to the provisions of Sections 6 and 7 of the Act. It therefore follows that I conclude that it has not been shown that defendant violated the provisions of the Act.

*If the three employees were not employed in a bona fide executive capacity, were their hours of labor and compensation in violation of the Act?*

Since I have concluded that the three defendants in question were employed in a bona fide executive capacity, the determination of this question is not necessary for a decision of the matter before me. However, since I have studied the question, I will make some observations, obiter, for my own guidance, should the question again arise, even though such observations should serve no other useful purpose.

Miss Williams was employed for a definitely fixed maximum work week of 54 hours, at weekly compensation of $30. More frequently than not, she worked less than 54 hours, as she customarily quit on Saturdays around lunch time. She was never required to work more than 54 hours in any week, and under her agreement with her employer, it had no right to require her to work any more than 54 hours in any one week.

Altice and Boles worked 63 hours per week, and received compensation of $45 per week. They were never required to work longer than 63 hours per week, nor was there any understanding that the employer had any right to require them to work any longer hours.

Plaintiff concedes, if I understood counsel correctly, that the arrangement set out in defendant's letter to Miss Williams and Altice of May 17th follows the formula approved in Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, and is therefore in compliance with the Act. However, plaintiff contends that the employment contracts, as set out in the letters to Miss Williams and Altice of May 10, 1945, which was the arrangement in force at the time of the institution of this action and theretofore, constituted violations of the Act, because of the holding in Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 1218, 86 L.Ed. 1682. Plaintiff contends that, inasmuch as this arrangement provided for no definite hourly rate, the formula set out in Overnight Motor Co. v. Missel, supra, should be applied, and that if this formula were applied, the three employees would have been underpaid. That is to say, the plaintiff contends that, in order to determine their regular hourly rates, the fixed weekly wage of each employee should be divided by his or her regular hours of work. Plaintiff contends that each employee would be entitled to this regular hourly rate for the first forty hours, and would be entitled to one and one-half times this rate for the hours in each instance worked over and above 40 hours, during any work week. Applying this formula, each employee would have been underpaid; for instance, in Miss Williams' case, by dividing the number of hours of her work week, 54, into her weekly salary, $30, her regular hourly rate would be determined at $55\frac{1}{2}$ cents per hour. At this rate, for 40 hours, she would be entitled to $22.20. She would also be entitled to compensation at one and one-half times her regular hourly rate ($1\frac{1}{2}$ x $55\frac{1}{2}$ cents) or $83\frac{1}{4}$ cents per hour for 14 hours, which is $11.65. Therefore under this formula her weekly compensation for a work week of 54 hours should have been $22.20 plus $11.65, or $33.-85, instead of the $30 which she got.

Defendant contends that the facts of the instant case differ from those obtaining in the Missel case, and therefore do not justify the application of the formula set out in the Missel case. The principal difference in the factual situation is that here, the employee's maximum number of hours per week was definitely fixed, whereas in the Missel case, the hours of the work week were highly irregular. There, the court said: "The work for which he was employed involved wide fluctuations in the time required to complete his duties." His average work

week was 65 hours, with a maximum of 80 hours for two weeks, and 75 hours in each of three weeks.

Defendant contends that the instant case is controlled by the Belo case, although no regular hourly rate was fixed in the contract between employer and employees in the instant case. It seems to me that this is a fatal difference. All the cases which I have been able to find on the subject seem to hold that whether the number of hours in the work week are regular or irregular, unless the regular hourly rate is fixed by contract between employer and employee, the court will apply the formula of the Missel case and determine the regular hourly rate to be the quotient of the weekly rate of pay divided by the number of hours actually contracted for or actually worked. Patsy Oil & Gas Co. v. Roberts, 10 Cir., 132 F.2d 826; Adams v. Union Dime Savings Bank, 2 Cir., 144 F.2d 290; Seneca Coal & Coke Co. v. Lofton, 10 Cir., 136 F.2d 359. In this latter case, the court said (136 F. 2d at page 362): "It is now settled beyond dispute that where a 'regular rate' is not expressly provided in the employment contract, or where the agreed compensation is not so allocated to a statutory work week and to overtime hours so as to make the regular rate explicit in the contract, the court will not supply the deficiency by implication, but will determine the regular rate by dividing the total weekly compensation by the total hours worked."

I would therefore conclude that, if the three employees in question were not employed in a bona fide executive capacity, prior to May 17, 1945, they have not been compensated as required by Sections 6 and 7 of the Act.

However, as I have found that the employees in question were bona fide executives, it follows that an order will be entered overruling plaintiff's motion for a preliminary injunction.