**Howard P. MARTIN, Administrator, Appellant,**

v.

**Jeannette B. BROWN et al., Appellees.**

**No. 13864.**

District of Columbia Court of Appeals.

Argued June 6, 1979.

Decided Sept. 11, 1979.

---

Marshall P. Johnson, Washington, D. C., with whom David S. Scrivener, Washington, D. C., was on the brief, for appellant. Lawrence Scheewe, Washington, D. C., also entered an appearance for appellant.

William J. Fitzgerald, Washington, D. C., for appellees. Dennis Collins, Washington, D. C., also entered an appearance for appellees.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

KELLY, Associate Judge:

At issue in this case is the disposition, upon the death of Thomasene B. Martin, of certain property owned by her during her lifetime. The parties who claim the property are appellant Howard Martin, decedent's widower, and appellees Jeannette Brown and Eleanor Wood, decedent's sister and niece, respectively. The rights to three savings accounts, one piece of real property, and various items of personal property such as clothing and furniture are questioned.

Both parties sued in the trial court: the widower claiming his intestate share in the bank accounts and full title to the remaining property; the appellees claiming their intestate share of the value of the house and its furnishings, and appellee Brown claiming full title to the bank accounts and certain personal property. The cases were consolidated for trial.

The trial court found for appellees Brown and Wood. The widower appeals, arguing that the court erred in finding that the savings accounts in question were joint accounts with a right of survivorship and that appellee Brown had not been fully compensated for her interest in the real property.[1] We discuss the facts of the case in relation to the arguments to which they pertain.

---

1. Appellant also argues that equity demands that he be awarded full title to the real property because he and his wife lived there for almost 16 years and cared for the owner of the house, decedent's foster mother, from 1960 until her death in 1968. Appellant offers no support in the law for the proposition that his gratuitous actions providing care for the foster mother were sufficient consideration to defeat the interest of an adverse party. Indeed, the law supports the opposite conclusion. See 17 Am. Jur.2d Contracts § 128 (1964). Moreover, the record shows that a number of household expenses were met by Mrs. Brown.

## I. THE SAVINGS ACCOUNTS

Upon the death of Thomasene Martin, Mrs. Brown entered the Martin house and removed documents representing three bank accounts for which she and Mrs. Martin were listed as joint owners. In determining this appeal, we must decide whether the trial court erred in holding the three accounts were true joint accounts, thus giving Mrs. Brown the right of survivorship, rather than merely "convenience accounts" owned wholly by Mrs. Martin, thus making them part of the estate and entitling the parties to take their intestate shares.[2]

Two of the accounts in question were with National Savings and Trust Co. (NS&T); one contained $13,211.00 at the time of Mrs. Martin's death (NS&T No. 08–10–07503–6, hereinafter NS&T No. 1), and the other contained $1,527.52 (NS&T No. 08–10–11084–1, hereinafter NS&T No. 2). The third account was with Perpetual Federal Savings and Loan (Perpetual) and contained $3,646.53 at the time of Mrs. Martin's death.

Mrs. Brown's account of the origin and purpose of at least two of the accounts is consistent with the theory of joint ownership. She testified that NS&T No. 1 was established with funds that she and Mrs. Martin received at the death of their father. The purpose of the account was to care for their late father's second wife, Georgianne Bryant. The other NS&T account was, according to Mrs. Brown, established to facilitate Mrs. Martin's cashing of Mrs. Brown's paychecks. The precise workings of this arrangement were never explored. There appears to be no direct testimony concerning the source and use of the Perpetual account.[3]

Appellant presented evidence that all three accounts were established by Mrs. Martin and later made joint with Mrs. Brown. Neither he nor his witnesses, however, could provide any indication of the source of the funds in the accounts or the use of those funds.

There was introduced at trial very little documentary evidence concerning the bank accounts. Appellant introduced signature cards that showed that the Perpetual account was opened by Mrs. Martin on March 11, 1964 and made joint on March 20, 1964. Signature cards for the NS&T accounts were also introduced into evidence.

The trial court accepted the testimony of Mrs. Brown, concluding that

> In the instant case we have a situation analogous to those cited above in which the right to survivorship was recognized. The sisters, Brown and Martin, were extremely close and they jointly bore responsibility for the family's financial affairs. Each contributed significantly to the funds in the joint account, and each had access to and used the accounts. At least one of the accounts was and still is used for the care of their father's aging widow. Mrs. Martin was a well-educated woman and it is likely that she understood the nature and consequences of a joint account. It seems clear from the evidence that Mrs. Martin and Mrs. Brown knew what they were doing when they established these accounts and fully intended to create survivorship rights.

Appellant's argument on appeal takes two approaches. First, he contends that the trial court clearly erred in finding that one of the accounts was opened by Mrs. Brown and later made joint with Mrs. Martin. See Super.Ct.Civ.R. 52(a). While the court was mistaken in reversing the names of the parties, the misstatement was not influential in the court's decision.

Appellant's second argument is that appellee Brown did not meet her burden of disproving the presumption that the accounts were established as convenience

---

2. The three parties in this case comprise all of Mrs. Martin's heirs at law. Intestate distribution of the estate would be as follows: one-half to Mr. Martin as the surviving spouse, and one-fourth each to Mrs. Brown and Mrs. Wood as collateral heirs.

3. The status of the Perpetual account is further confused by the existence of a second Perpetual account that apparently contained funds that were passed to Mrs. Brown at the death of her mother. This account is not at issue in this case.

accounts. Appellant relies heavily on *Murray v. Gadsden*, 91 U.S.App.D.C. 38, 197 F.2d 194 (1952). In that case, the court addressed a claim very similar to the one presented here; that is, a challenge by a husband, administrator, against a claim made by his late wife's sister to full title to an account held jointly by the sisters. As in our case, the account in question in *Murray* was opened by the decedent and later made joint. The surviving sister argued that there was a presumption, supported by language on the signature card establishing the account, that the parties intended a right of survivorship. The court ruled, however, that the surviving sister must show that she attained an interest in the account through bequest, contract, gift, or trust, and, absent explicit trust language on the face of the account agreement, the presumption is that the account was established for the convenience of the original owner.

In its extensive findings of fact and conclusions of law, the trial court in this case acknowledged *Murray* and its progeny but distinguished that case on its facts. The court analyzed three cases from this jurisdiction in which a right of survivorship was found based on the facts and circumstances of each case. A key element in the cases was the relationship between the joint owners. *See Prather v. Hill*, D.C.App., 250 A.2d 690 (1969) (landlady and tenant, close personal relationship); *Horowitz v. Fainberg*, 126 U.S.App.D.C. 122, 374 F.2d 336 (1967) (father and son, equal contributions); *Donoughe v. Morgan*, 112 U.S.App.D.C. 1, 298 F.2d 329 (1962) (brother and sister who had lived together for 56 years).

■ We agree with appellant that *Murray* established a presumption against survivorship and allowed admission of parol evidence to rebut that presumption. We agree with the trial court, however, that *Murray* is tied to its facts. There, the husband, administrator, alleged in his complaint

that, after Mrs. Gadsden's name was added as a co-depositor, Mrs. Murray retained the passbooks, made all subsequent deposits and withdrawals, reported the dividends as her own taxable income, and throughout her life continued to regard the accounts as her sole property. . . [*Murray v. Gadsden, supra* 91 U.S.App. D.C. at 46, 197 F.2d at 202.]

These allegations were not explicitly denied. The situation in *Murray*, therefore, was one in which the funds for the joint account apparently were contributed by only one of the joint owners. In such a case, the other owner must demonstrate the legal origin of his or her interest; to wit, a gift, trust, contract, or bequest.

■ In our situation, we diverge from the *Murray* facts at the threshold of original ownership. Here, the uncontroverted allegation is that each of the co-owners provided some of the funds used to establish the accounts. Those facts effectively rebut the implied and necessary *Murray* presumption that the individual who opened the account owned all of the funds in the account. We, therefore, need not address the questions of gift, trust, contract, or bequest. We need only look to the facts and circumstances of the case to determine the intentions of the parties.

The trial court found that the relationship of the parties, the intelligence of Mrs. Martin, and the source, use, and accessibility of the funds indicated that the parties intended joint ownership with a right of survivorship. That finding will not be disturbed unless it is clearly erroneous and without evidentiary support. *E. g., Blanken & Blanken Investments, Inc. v. Keg, Inc.*, D.C.App., 383 A.2d 1076 (1978); *Gustin v. Stegall*, D.C.App., 347 A.2d 917, *cert. denied*, 425 U.S. 974, 96 S.Ct. 2174, 48 L.Ed.2d 798 (1975); D.C.Code 1973, § 17–305.

■ As to the two NS&T accounts, there was substantial evidence to support the trial court's finding. Mrs. Brown presented a reasonable explanation of the source and use of each account and appellant could not deny the truth of that explanation. As to the Perpetual account, however, there was no evidence that Mrs. Brown contributed any money to that

account nor did she make any withdrawals from the account or use the funds in any way. The relationship of the co-owners, the education of Mrs. Martin, the close temporal proximity of the opening of the account and the addition of the name of the joint owner are not sufficient to uphold the trial court's finding. We must, therefore, reverse as to the Perpetual account, *see Edison v. Scott,* D.C.App., 388 A.2d 1239 (1978), thus placing it in the intestate estate.

## II. THE HOUSE·

The property in question, 604 Girard Street, N.E., was bought in 1960 by Mrs. Mamie Williams, the aunt of Mrs. Martin and Mrs. Brown. Mrs. Williams reared the two sisters and their brother, Vincent Bryant, after their mother's death. The Martins lived in the house with Mrs. Williams until her death in 1968. In her will, Mrs. Williams left $1,000 each to Bryant and his daughter, Mrs. Wood, and she left the remainder, including the house and its furnishings to the two sisters. As of 1968, therefore, Mrs. Martin and Mrs. Brown each had an undivided one-half interest in the property.

Appellant maintained at trial that he and his wife bought out Mrs. Brown's interest in the house and thus he is entitled to full title to the house and its contents as the surviving tenant by the entirety. Appellees aver that no such payment was made and therefore Mrs. Martin's interest in the house and the furnishings should pass through intestacy to the parties: one-quarter of the property to Mr. Martin (one-half of one-half), one-eighth to Mrs. Wood (one-quarter of one-half), and five-eighths to Mrs. Brown (one-quarter of one-half plus one-half). Furthermore, appellees claim their pro rata portion of the reasonable rent on the property for the period of time appellant occupied the house after Mrs. Martin's death, appellant having changed the locks thus denying appellees entry into the house.

Appellant offers two reasons why we should reverse the trial court's ruling in favor of appellees on all counts. Having dismissed one reason summarily above, *see* note 1 *supra,* we address only the second.

 Appellant argues that the trial court's finding—that Mrs. Brown had not been compensated for her interest in the property—is clearly erroneous. We cannot agree. Resolution of this simple case of opposing stories turns on the credibility of the witnesses, and the trial court is in the best position to judge that credibility.[4] *Blitz v. Hobbs,* D.C.Mun.App., 160 A.2d 803 (1960).

Finding substantial evidence to support all portions of the trial court's ruling except the disposition of the Perpetual account, which must now pass through Mrs. Martin's estate, the judgment on appeal is

*Affirmed in part and reversed in part.*

---

4. No documentary evidence was submitted in support of appellant's claims. He did refer to Mrs. Brown's statement in a deposition that she (Mrs. Brown) had told her husband that Mrs. Martin had paid her for her interest in the house. The deposition, however, also contains a statement, albeit confusing, by Mrs. Brown that she had lied to her husband on the subject because they were involved in a domestic dispute about money.