ESTATE OF Katie W. PRESGRAVE,
Charles L. Wilkes, Personal
Representative, Appellant,

v.

Robert J. STEPHENS, Appellee.

No. 86–96.

District of Columbia Court of Appeals.

Argued Nov. 5, 1986.
Decided July 27, 1987.

Ronald L. Early, with whom Elizabeth S. Adams, Bethesda, Md., was on the brief, for appellant.

Charles L. Richards, Silver Spring, Md., for appellee.

Before MACK and ROGERS, Associate Judges, and PAIR, Senior Judge.

ROGERS, Associate Judge:

This is an appeal from an order dismissing a petition for rule to show cause, and determining that appellee Robert J. Stephens is the legal owner of two certificates of deposit and a checking account. Appellant Charles L. Wilkes, the legal representative of the estate of Katie W. Presgrave, contends that the trial court erred in (1) rendering a final judgment on the merits after a show cause hearing; (2) failing to give appellant adequate notice of the court's intention to render a final judgment on the merits; and (3) determining that during her lifetime Katie W. Presgrave intended to confer a present interest in the disputed assets in appellee. We hold the procedural error was harmless and the record supports the trial court's finding that appellee met his burden to show by clear and convincing evidence that the decedent intended to make an inter vivos gift of the accounts to him. Accordingly, we affirm.

## I.

Appellee Stephens was the nephew of decedent Katie W. Presgrave. Stephens' relationship with his aunt had been a close one—he visited her frequently for thirty-five years, helped her with her errands, and generally took care of her. During her lifetime Ms. Presgrave purchased two certificates of deposit at Columbia First Federal Savings and Loan which were jointly titled in the names of "Katie W. Presgrave or Robert J. Stephens subject to the order of either or the survivor," and opened a checking account at American Security Bank in the names of herself and Stephens.

Following Ms. Presgrave's death, appellant Wilkes filed a petition for abbreviated probate, D.C. Code §§ 20-304 and 20-312 (1981), the will was admitted to probate and Wilkes was appointed the personal representative of the estate.[1] He thereafter asked Stephens to turn over to the estate the two certificates of deposit and the checking account. When Stephens refused, Wilkes filed a petition for an order to show cause on August 29, 1985, on the ground that the accounts were assets of the estate jointly titled for the convenience of the decedent, and requested that Stephens be directed to turn them over to the estate. An order to show cause was issued six days later directing Stephens to show on October 21, 1985 why he should not disclose and turn over to Wilkes all assets he had which belonged to the estate. On that date, Stephens filed an answer in which he asserted that the accounts belonged to him as the surviving joint tenant, and requested that the show cause order be dismissed, or, alternatively, that a hearing be held to establish ownership of the accounts; he also requested a jury trial.[2]

---

1. In her will, Ms. Presgrave made a number of specific monetary bequests to personal friends, relatives, and two churches, and a series of bequests of personal property to relatives, including appellee Stephens and his wife (who were to receive a diamond ring, a perfume cameo and $2000). The residuary estate was bequeathed in trust to Henry Smith, a friend, for his life and thereafter the trust would terminate and the trust property would go to Mabel Mullen, the wife of a nephew; Ms. Mullen also would receive the property in the event Mr. Smith predeceased Ms. Presgrave.

2. Wilkes appears to argue that he had a right to expect a jury trial because Stephens requested one in his answer. However, Stephens apparently waived his right by not paying the required fee, Super.Ct.Civ.R. 38(d), and did not, after filing his answer, assert the right. Wilkes neither indicated he was relying on Stephens' request for a jury when he (Wilkes) proceeded to put on evidence at the show cause hearing nor suggested that he had any interest in a jury trial.

A hearing on the order to show cause was held on November 1, 1985.[3] Counsel for Wilkes and Stephens were present. Stephens stated at the outset he would present evidence that the decedent intended to give him a present interest with a right of survivorship in the accounts, and thereby overcome the presumption of convenience accounts on which Wilkes was relying. Stephens then testified, was cross-examined by Wilkes and also presented two witnesses: another nephew of the decedent, and a close friend and neighbor of the decedent. Wilkes limited his presentation to calling Stephens' wife as a witness regarding a letter Stephens had written to Wilkes in connection with an attempt to settle the dispute, and to arguing that the estate was entitled to the monies in the accounts because Stephens had failed to meet his burden of proving the decedent's intent to pass a present interest under *Davis v. Altmann*, 492 A.2d 884 (D.C. 1985).

The trial judge credited Stephens' testimony and, relying on *Davis v. Altmann*, ruled that Stephens had shown the decedent's intent to give him a present interest in the accounts by clear and convincing evidence. The judge asked Stephens to submit findings of fact and conclusions of law incorporating her findings, and he submitted a proposed order establishing his title to the assets. Wilkes thereafter submitted a proposed order allowing Stephens to retain possession of the accounts and setting a trial date for determining the issue of legal title. In a cover letter, Wilkes stated that it was his belief the show cause hearing was never intended to determine legal ownership and was not the proper forum for that determination. On November 29, 1985, the trial judge signed an order dismissing the rule to show cause and declaring Stephens the owner of the accounts.

**II.**

D.C.Code § 20–702 (1981) provides in pertinent part that, "The personal representative [of an estate] may maintain an action to recover possession of any property of the estate or to determine the title to any property of the decedent's estate." The probate statute also authorizes the personal representative to petition the court for permission to act in any matter relating to the administration of the estate. *Id.* § 20–742(a).[4] However, the statute refers to a rule to show cause only in the instance of a lost will, *id.* § 20–304(f)(4), and the rules of the Probate Division do not refer to a rule to show cause. Neither the federal nor the Superior Court rules of civil procedure provide for rules or orders to show cause. *United States v. Rollnick*, 33 F.Supp. 863, 865 (M.D.Pa.1940).[5] A number of federal cases hold that a rule or order to show cause should be treated as a motion, or a notice of motion under Fed.R.Civ.P. 7(b) since the notice of motion serves the same purpose as a rule.[6] This court will look for

---

**3.** At oral argument the parties said that the hearing had been continued once at Stephens' request because he needed time to get his witnesses. (One of Stephens' witnesses traveled to the District of Columbia from Florida.) Presumably a twelve-day continuance was granted on October 21, 1985, until November 1, 1985.

**4.** *See also id.* § 20–107 ("An interested person, the beneficiary of a trust or the Register [of Wills] may, at any time, apply to the Court to resolve questions concerning the estate or its administration.").

**5.** Professors Wright and Miller point out that the modern federal rules of civil procedure sought to avoid the complexities, technical requirements and burdens on the parties and court of a rule to show cause. C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1195

(1969); *see Mitchell v. Flynn*, 478 A.2d 1133, 1135 n. 2 (Me.1984).

**6.** *Walling v. Moore Milling Co.*, 62 F.Supp. 378, 382 (W.D.Va.1945) (order to show cause took the place of a notice of motion for preliminary injunction as required by Fed.R.Civ.P. 7 (b)); *Bankers Bond and Mortgage Co. v. Witherow*, 1 F.R.D. 197 (E.D.Pa.1940) (since Fed.R.Civ.P. 7(b) requires an application to the court to be by motion, petition for rule to show cause will be treated as motion); *United States v. Rollnick, supra*, 33 F.Supp. at 865 (new federal rules of civil procedure do not include a rule to show cause but the same effect can be accomplished by notice of motion); *see also Mitchell v. Flynn, supra* note 5, 478 A.2d at 1135 n. 2 (treating rule to show cause as motion and noting that expeditious consideration of matters raised by motion is accomplished by an order to shorten time for

guidance in interpreting our rules to federal cases interpreting federal rules which are similar to our own.[7]

■ Super.Ct.Civ.R. 7(b)(1) and FED.R. CIV.P. 7(b)(1) are identical in stating that an "application to the court for an order shall be by motion." The federal rule also provides that the written notice of motion may fulfill the requirement that the motion be in writing. A similar provision does not appear in Super.Ct.Civ.R. 7(b)(1) because it is inconsistent with local motions practice. *See* Comment to Super.Ct.Civ.R. 7. Therefore, federal cases holding that a petition for a rule to show cause should be treated as a notice of motion are inapposite. The federal cases holding that such a petition should be treated as a motion are nonetheless persuasive. Nothing in the statute or rules suggests that the nature of probate proceedings requires a different conclusion. Super.Ct.Prob.R. 10(a), 107(a) (civil rules of procedure shall govern in the absence of a probate rule). However, because Wilkes' petition was not accompanied by the points and authorities required for motions under Super.Ct.Civ.R. 12–I(e), it does not qualify as a motion under Super. Ct.Civ.R. 7(b). The question remains whether the petition can properly be treated as a pleading under Rule 7(a).[8]

■ Super.Ct.Civ.R. 3, which is identical to the federal rule, states that "[a] civil action is commenced by filing a complaint with the Court." "Under Super.Ct.Civ.R. 8(a) and (e), a complaint is sufficient so long as it fairly puts the defendant on notice of the claim against him." *Scott v. District of Columbia,* 493 A.2d 319, 323 (D.C.1985). *See also* Super.Ct.Civ.R. 8(f) ("all pleadings shall be so construed as to do substantial justice"). Since Wilkes' petition for rule to show cause which sought the relief provided in § 20–702, *supra,* was the first document filed in that regard, and put Stephens on notice of the claim against him, the petition could properly be deemed a mistakenly labeled complaint. *Farmer v. Farmer,* 526 A.2d 1365, 1369 (D.C.1987) (motion to appoint trustees tantamount to commencement of new action); *Marshall v. Weyerhaeuser Co.,* 456 F.Supp. 474 (D.N.J. 1978) (dictum);[9] *see Scott v. District of Columbia, supra,* 493 A.2d at 323; *Lee v. Foote,* 481 A.2d 484, 487 n. 8 (D.C.1984) (legal label for relief is not controlling); *Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 549 n. 5 (D.C.1981) (same, citing Rule 8(a) and *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).[10]

Super.Ct.Civ.R. 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, and ... a demand for judgment for the relief to which he [or she] deems himself [or herself] enti-

---

hearing on the motion). *But see* Frank, Book Review, 76 HARV.L.REV. 1704, 1706 (1963) (pointing to the advantages of having a specially labeled device, such as a rule to show cause, to bring a matter to issue quickly, letting the recipient of the order respond first, and thereby encouraging quick settlement of legal issues).

**7.** *See, e.g., Wallace v. Warehouse Employees Union # 730,* 482 A.2d 801, 807 (D.C.1984); *Jackson v. District of Columbia,* 412 A.2d 948, 951 n. 4 (D.C.1980); *Moore v. Moore,* 391 A.2d 762, 768 (D.C.1978); *see also* D.C. Code § 11–946 (1981).

**8.** Super.Ct.Civ.R. 7(a) provides:
*Pleadings.* There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a 3rd-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a 3rd-party answer, if a 3rd-party complaint is served. No other pleadings shall be allowed, except that the Court may order a reply to an answer or a 3rd-party answer.

**9.** In *Marshall v. Weyerhaeuser Co., supra,* the plaintiff commenced the action by filing an order to show cause, an affidavit, and a memorandum of law. The court noted that although a complaint is normally required to initiate a proceeding, the defendant was clearly on notice as to plaintiff's demand for relief and jurisdictional allegations through the order, accompanying affidavit and memorandum, so that any procedural defect was not jurisdictional. 456 F.Supp. at 477 n. 2.

**10.** In *Foote* and *LaVay,* the complaints did not contain claims for the "reasonable value of services rendered" and *"quantum meruit,"* respectively, but this court nevertheless held that the complaints were sufficient because they otherwise put the defendants on notice regarding the nature of the claims against them.

tled."[11] These requirements help to ensure that the defendant is adequately put on notice of the claim. *See Scott, supra,* 493 A.2d at 323. Stephens' answer to the rule to show cause, asserting that he was the legal owner of the accounts and asking for dismissal of the rule or a hearing on ownership of the accounts, demonstrates that he was on adequate notice of Wilkes' claim.

The twist in this case, however, is that it is not the defendant who is challenging the sufficiency of the complaint, but rather the party who filed the petition for a rule to show cause. Wilkes claims on appeal that he never intended for the trial judge to determine the legal title at the show cause hearing, but only intended to "secure possession of the assets pending resolution of the disputed ownership." The record does indicate that the petition, rule and format of the hearing were in the style of a show cause proceeding, *see supra* note 6, with Stephens presenting his evidence first at the hearing. However, the hearing record makes it clear that Wilkes was satisfied to rely on the presumption that the accounts were convenience accounts, and not joint accounts, to establish a prima facie case. Further, when the proceedings are considered as a whole it is clear that Wilkes intended for the court to determine legal title to the assets at the show cause hearing.

■ The petition for an order to show cause puts title, rather than mere possession, in issue by flatly stating that the accounts are "assets of this estate." It does not seek possession on an interim basis or request a bifurcated proceeding in which the issue of the right to possession would be determined at the show cause

hearing and the issue of legal title at some later date. The order to show cause, consistent with the relief requested in the petition, directed Stephens to show cause why he should not turn over to the estate all assets he had "belonging to the above estate." In his answer to the order to show cause, Stephens stated that the accounts belonged to him and not to the estate.

■ Wilkes voluntarily appeared at the hearing, and voiced no objection either to the nature or course of the proceedings or to the trial judge's adverse ruling, following the presentation of evidence and legal arguments, that Stephens had legal title to the accounts. From the outset of the hearing, Stephens made it clear he sought to overcome the presumption of *Davis v. Altmann, supra.* Wilkes cross-examined Stephens and his witnesses, and attempted to impeach Stephens with his deposition to show that the decedent had not intended to make an inter vivos gift to Stephens. Wilkes presented his own case, calling Stephens' wife regarding a letter in which Stephens had agreed in connection with efforts to settle the dispute that two of the accounts belonged to the estate, *see* note 17, *infra,* and arguing that Stephens had failed to meet his burden of proof. In closing argument, Wilkes stated that "I believe that according to the law of the District of Columbia, that these assets must be turned over to the Estate to be distributed," and thus unequivocally indicated that he expected the issue of title to the accounts to be resolved at the show cause hearing rather than at a future trial on the same issue.[12] Wilkes made no proffer to the trial court that he wished to present other evidence or needed additional

11. Rule 8(a) also requires a complaint to state the grounds for the court's jurisdiction, unless the court already has jurisdiction. In the instant case, the court had exercised its jurisdiction by granting Wilkes' petition for abbreviated probate, and thus retained jurisdiction for purposes of final administration and distribution of the assets of the estate. The same administration number appears on all the documents in the record.

12. Wilkes' clear awareness that title, rather than mere possession, was being adjudicated at the

hearing distinguishes this case from injunction cases. In *Woe v. Cuomo,* 801 F.2d 627 (2d Cir.1986), for example, a preliminary injunction had been requested. Because "[t]he record clearly indicate[d] that appellants' counsel functioned throughout the hearing under the belief that only a motion for temporary relief and not the merits of the claim was at issue," the circuit court held that it was error for the trial judge to grant a permanent injunction without notifying the parties. 801 F.2d at 629.

time to prepare his case. Therefore, having participated in the show cause hearing without objection, Wilkes is deemed to have consented to the proceeding as it was conducted. *Williams v. Williams*, 495 A.2d 754, 755 (D.C.1985) (parties impliedly consented to try the issue of divorce); *Moore v. Moore*, 391 A.2d 762, 768 (D.C.1978) ("the clearest indications of a party's implied consent to try an issue lie in the failure to object to evidence ... which is clearly appropriate to the new issue but not to other matters specified in the pleadings."); *cf.* Super.Ct.Civ.R. 15(b).[13]

Since the record demonstrates Wilkes was on notice that title to the accounts would be decided at the show cause hearing, his contention that he was denied an opportunity to present his full case because he was expecting another hearing is unpersuasive. Even when, in filing proposed findings and an order, Wilkes finally alerted the Register of Wills that he expected there would be a later trial to determine title, he did not indicate how he had been prevented from presenting his case;[14] he stated only his belief about the interim nature of the show cause hearing and that the rules entitled him to full discovery at a trial. Nor did he file a motion for reconsideration. Super.Ct.Civ.R. 59, 60(b). Noth-

ing in D.C. Code § 20–702, *supra*, under which he claims the further action would be brought, suggests that when the personal representative brings an action in the form of a petition to show cause, the final merits of title to assets claimed by the estate will not be reached until a subsequent trial. Although we do not endorse the procedure employed here,[15] Wilkes, having failed to show prejudice, is not entitled to another hearing.[16]

■ Accordingly, the issue of title to the accounts having been joined in response to Wilkes' petition and decided after an evidentiary hearing in which Wilkes fully participated without objection, we hold that any error by the trial court in proceeding to the merits at the hearing on petition to show cause without expressly alerting the parties was harmless error and not jurisdictional.

### III.

On the merits, Wilkes contends the trial court erred in finding that the decedent intended to confer a present interest in the accounts in Stephens. Wilkes argues that if the decedent was attempting to direct the disposition of her assets after her death, rather than to pass a present inter-

---

13. Super.Ct.Civ.R. 15(b) provides:

*Amendments to conform to the evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the Court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the Court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The Court may grant a continuance to enable the objecting party to meet such evidence.

14. Wilkes conceded at oral argument that the issue of legal title to the accounts was the only

issue to be resolved before distribution of the estate.

15. The Superior Court rules should be followed in preparing pleadings, and if Wilkes had done so, the procedural dispute before us would have been avoided.

16. Wilkes' reliance on *Kirby Lumber Corp. v. Cain,* 212 La. 1055, 34 So.2d 259, 260 (1948), is misplaced. In *Kirby,* there was an understanding and agreement by all counsel, of which the trial judge was advised before the evidence was concluded, that the merits were not submitted for adjudication at the show cause hearing, and no evidence was submitted on certain matters at issue. Wilkes' reliance on *Application of Alamance Sav. & Loan Ass'n,* 53 N.C.App. 326, 280 S.E.2d 748 (1981) (any error in entering a final judgment on the merits after a show cause hearing was harmless because all of the relevant evidence was presented to the trial judge), is also misplaced; on appeal Wilkes has failed to make a sufficient proffer that all the relevant evidence was not presented at the show cause hearing. *See infra* Part III.

est in them to Stephens, her attempted testamentary disposition would be void under the statute of wills. *Gibson v. Industrial Bank of Washington*, 36 A.2d 62, 64–65 (D.C.1944); D.C. Code § 18–103 (1981).

▮ The burden of proving that a transfer was an inter vivos gift is upon the party asserting the gift, and when the gift is asserted after the donor has died it must be established by clear and convincing evidence. *Davis v. Altmann, supra*, 492 A.2d at 885. "The requisites of a valid gift *inter vivos* are delivery, intention on the part of the donor to make a gift, and absolute disposition of the subject of the gift." *Murray v. Gadsden*, 91 U.S.App.D.C. 38, 49, 197 F.2d 194, 205 (1952). "Where a party opens a joint account for himself [or herself] and another without consideration, the account is presumed open for the convenience of that party." *Davis v. Altmann, supra*, 492 A.2d at 885. If none of the money in the joint accounts came from Stephens, *see* note 17, *infra*, the presumption arises that the accounts were set up for decedent's convenience rather than as a gift. *Id.* This court may not set aside the trial court's factual findings unless they are clearly erroneous or without evidence to support them. *Hagans Management Co. v. Nichols*, 409 A.2d 179 (D.C.1979); D.C.Code § 17–305(a) (1981). We hold the evidence presented by Stephens was sufficient to overcome the presumption.

▮ Stephens testified that his aunt intended the accounts to be jointly owned with a right of survivorship, and that she intended for him to be able to use the money during her lifetime, as well as to retain any remainder at her death.[17] He also testified that although his aunt told him he had the right to use this money during her lifetime, and in fact encouraged him to buy a new car, he did not use any of the money because he thought he did not need it and his aunt did. Two witnesses— Lewis DeBernard, also a nephew of the decedent, and Emma Bevens, the decedent's next door neighbor and friend for thirty-four years—corroborated Stephens' testimony. DeBernard testified that his aunt, who was his "second mother," "wanted [Stephens] to take care of her and pay her bills and if [he] wanted to use some of the money for his own personal use, that he could do it, as long as he left enough money in there until she passed away. And after she passed away she wanted [him] to have that account." DeBernard said that Stephens did more for the decedent than anyone else, going to see her five or six times a week. Bevens testified that Ms. Presgrave had discussed the accounts with her and intended for Stephens to have the right to use them during her lifetime. This evidence clearly and convincingly supports the trial judge's finding that the decedent intended to create a present interest and right of survivorship in Stephens, and that Stephens had met his burden to show that the accounts belonged to him rather than the estate.[18]

17. Wilkes' attempt to demonstrate that Stephens' testimony is inherently ambiguous fails when Stephens' statements are viewed in context. Moreover, Wilkes failed to introduce into evidence Stephens' deposition with which Wilkes attempted to impeach Stephens. In any event, we defer to the trial court's evaluation of credibility and will not disturb the trial court's finding because it was not clearly erroneous. *See Martin v. Brown*, 410 A.2d 205, 209 (D.C. 1979); D.C.Code § 17–305. Stephens also explained that his letter to Wilkes stating that the accounts belonged to the estate represented an attempt to settle the dispute by turning over all except one of the certificates of deposit. As to that certificate he could not recall if any of his personal money had gone into the account, although he had deposited a couple of small checks but could not remember what they were.

18. The facts in *Davis v. Altmann, supra*, 492 A.2d 884, are strikingly different. The money at issue in that case had been transferred from the decedent's accounts in "the last few months before he died" to two employees who had been hired to take care of him and his mentally ill daughter. Each employee received a weekly salary of $1,120 after taxes. The decedent was 96 years old, senile and suffered memory lapses as well as hearing, seeing and speaking difficulties as a result of gangrene; he was largely confined to his bed and was hospitalized seven times in the last 18 months before he died. In the last four months of his life, all of his AT & T stock was sold for $156,707, and $10,000 in stocks from his Bache security account was sold. Of this money, the employees kept $85,-000 as well as five municipal bonds worth $1,000 each. Two joint bank accounts had been established with one of the employees after dis-

For the first time on appeal Wilkes asserts in his brief that he would have called additional witnesses at a full jury trial. They include Mabel Mullen, who is misidentified in his brief as a niece of the decedent, *see supra* note 1, who would have testified that Stephens had "converted the decedent's accounts into joint accounts without the decedent's knowledge and against her wishes." Wilkes further claims that he had not completed discovery at the date of the show cause hearing or secured the testimony of other potential witnesses from among the members of the decedent's family, her Guardian Ad Litem and attending physician, "to testify regarding the decedent's mental capacity," and he also wanted to show that the decedent had paid all taxes on interest earned by the accounts. These claims are not properly before us. *Morski v. Murphy,* 85 A.2d 806, 808 (D.C.1952) ("the theory of a case not presented in the trial court may not furnish the basis for reversal on appeal"). The witnesses now identified were known to Wilkes when he filed the petition for abbreviated probate and when he participated in the hearing, which he knew would resolve the issue of title. Nothing in the record suggests the decedent lacked the mental capacity at the time she established the accounts. Bare assertions about witnesses' testimony at this late date are insufficient on this record to set aside the trial court's ruling.

*Affirmed.*

MACK, Associate Judge, dissenting:

Seen in its best light, the majority's position has the salutary effect of advancing the cause of judicial economy. It does not, however, advance the cause of the sound and fair administration of decedents' estates. On the facts of this case, I cannot agree with the majority's conclusions that, without notice, a show cause petition to protect assets can double as a pleading to determine title, that a show cause hearing can be deemed an adequate substitute for a trial, and that the trial court's action in deciding this case on the merits, after a show cause hearing, can be merely "harmless procedural error."

Upon the death of Katie Presgrave, appellee Stephens took possession of a jointly titled checking account and two jointly titled certificates of deposit. Appellant Wilkes, the personal representative of the estate, requested that appellee turn over the property to the estate, but Mr. Stephens refused. The personal representative filed a petition for rule to show cause, which would require appellee to turn over the property to the estate pending a final judgment on the merits establishing legal ownership. But upon completion of the show cause hearing, the trial court declared Mr. Stephens *owner* of the accounts.

I believe the trial court erred in essentially converting this show cause hearing into a trial on the merits. The majority's assertion that the parties were fully aware of the finality of the proceedings is unpersuasive. Its conclusion that a full trial on the merits would have yielded results identical to the show cause hearing is, quite simply, premature.

The majority states it was "clear that [appellant] Wilkes intended for the court to determine legal title to the assets at the show cause hearing." Majority opinion at 278. The facts show otherwise. While the record reveals no explicit references by either party to the temporary or final nature of the proceedings, circumstantial evidence supports the inference that the parties assumed the hearing was one to determine temporary possession pending a full trial regarding legal ownership.

Appellant filed the petition for rule to show cause in order to protect what the estate regarded as its assets from possible dissipation by the appellee—not an impossibility, given that bank accounts are easily depleted. After the court issued the order

cussions with the decedent's son and attorney. A few days after the decedent's death, one of the employees withdrew $36,562 from the accounts, thereby virtually depleting them. None of the employees' money had ever been deposited in either account. The trial court held that the employees had failed to meet their burden to show by clear and convincing evidence that the inter vivos transfers were gifts, and this court upheld that determination.

to show cause, the appellee filed an answer which indicates that it was his assumption that the hearing would determine only temporary possession pending a full trial on the merits. Not only did Mr. Stephens' answer request the show cause petition be dismissed, or in the alternative, that a hearing be set to establish ownership of the accounts, but appellee requested a jury trial in the answer.

At no time during the hearing did the trial court indicate that it was about to issue a final determination on the merits. Nor does the record reveal remarks by either party that express this expectation. In fact, the conduct of the entire proceeding was consistent with the understanding that the hearing was only a show cause hearing and not a full trial on the issue of ownership of the disputed assets. The format of the proceeding was in conformity with that of a show cause hearing, with Stephens presenting his evidence first. The opening remarks of the trial judge indicate that the court understood the proceeding to constitute nothing other than a show cause hearing.[1] Most significantly, the estate presented only one witness and had not even completed discovery by the time of the show cause hearing.[2] After the judge asked Stephens to submit findings of fact and conclusions of law incorporating her findings, appellant submitted a proposed order allowing Stephens to retain possession of the accounts and setting a trial date for determining the issue of legal title. In a cover letter, appellant stated that it was his belief the show cause hearing was never intended to determine legal ownership and was not the proper forum for that determination. He also informed the Register of Wills that he regarded the hearing as an interim proceeding pending a full trial.

The majority concedes that "the petition, rule and format of the hearing were in the style of a show cause proceeding." Majority opinion at 278. However, the majority concludes that a full trial on the merits would yield results identical to the show cause hearing, and thus maintains appellant suffered no prejudice from the trial court's action. My response is twofold. First, I believe that such a prognosis requires a level of foresight which at this point we simply do not have; we cannot know what evidence appellant would have presented at a full trial on the merits. As the court in *Commodity Futures Trading Commission v. Board of Trade*, 657 F.2d 124, 127 (7th Cir.1981) commented in discussing the problem with converting a hearing on a motion to issue a preliminary injunction to a permanent injunction hearing:

> Evidence adduced at the preliminary injunction hearing may be incomplete because "[a] plaintiff putting on his case for temporary relief may hold back evidence, or indeed, his case may not be fully developed. Thus it is important for him to know that when he puts on his evidence he is having his final 'day in court' ".

Citing 7 MOORE'S FEDERAL PRACTICE § 65–04(4) at 65–67 (2d ed. 1980).

Appellant in the instant case did not put forward all of his evidence or fully develop his case. He certainly was not on notice that it was to be his first and last chance to prove ownership of the disputed assets. The majority fails to explain how we can assume that undiscovered and/or undeveloped evidence would unquestionably lack substance and effect.

But secondly, and more significantly, appellant has provided ample support for his contention of prejudice. Had he known the

---

1. After explaining the theory on which appellee was going to proceed, appellee stated: "That's going to be our case, your honor. Now, as I understand it, you want us to proceed, your Honor? The respondent?" The court responded: "Well, yes, here on the show cause claim—"; and appellee rejoined, "All right. So its up to the show cause."

2. I note that at oral argument it was revealed that the law firm representing the estate had sent a first-year associate to the show cause hearing. One might ask whether it is reasonable to assume that a law firm would send an inexperienced first-year associate to such a "hearing," if the firm realized that in fact the hearing was to be a final determination on the merits.

show cause hearing was to be a final decision regarding ownership of the assets, appellant contends that he would have presented additional witnesses, *inter alia,* Mabel Mullen, who was expected to testify that appellee converted the decedent's accounts into joint accounts without the decedent's knowledge and against her wishes. Appellant indicated he expected to call other members of decedent's family, including Arthur Mullen, decedent's nephew, and Virginia Nessenthaler, decedent's niece, to testify regarding the establishment of the joint accounts. Appellant also expected to call Richard J. Slabach, decedent's attending physician, to testify as to decedent's mental capacity. Finally, he intended to conduct discovery and present evidence concerning income tax returns filed by the decedent and the appellee, revealing that decedent paid all taxes and received all benefits from the interest income of the disputed accounts.

The majority errs in concluding that the trial court was justified in deciding this case on the merits prior to full discovery and presentation of witnesses also because of the closeness of this case. Based on the testimony of witnesses at the show cause hearing, the question of whether the checking account and certificates of deposit were given to Stephens by the elderly Presgrave as an *inter vivos* gift presented the court with a very close call. There is an explicit presumption that joint accounts created with funds supplied only by one party are presumed opened solely for the convenience of the depositor. *Davis v. Altmann,* 492 A.2d 884 (D.C.1985). As the majority points out, it is appellee Stephens' burden to prove by clear and convincing evidence that Mrs. Presgrave indeed gave him the money in the accounts as an *inter vivos* gift. Despite the testimony showing Stephens to have been a caring and devoted caretaker, he himself made several statements which are inconsistent with his ownership of the accounts, testifying repeatedly at the show cause hearing as to his belief that the monies remaining in the accounts would only pass to him upon decedent's death. At the same time, appellee testified that he enjoyed access to the monies for his personal use during decedent's life, although he never drew on the accounts for personal expenditures or deposited his own money in them. Given that Stephen's testimony regarding his ownership of the accounts is inherently ambiguous, it is certainly arguable whether appellee has proved by clear and convincing evidence that the decedent intended to confer a present interest in him in the disputed assets.

At a minimum, the trial court should have alerted the parties to its decision to elevate the show cause hearing to a final determination of ownership of the disputed assets. As the court in *Gellman v. State of Maryland,* 538 F.2d 603 (4th Cir.1976) states in discussing the conversion of a hearing on a preliminary injunction to a permanent injunction hearing without notice to the parties:

> "Although there is no indication that plaintiff would have produced further testimony if notified earlier that the entire case would be disposed of after a single hearing, this does not sanction the court in changing, *sub silentio,* the nature of the game at halftime."

*Id.* at 605 (quoting *T.M.T. Trailer Ferry Inc. v. Union De Tronquistas, P.R. Loc. 901,* 453 F.2d 1171, 1172 (1st Cir.1971)).

Cases in which hearings on motions for preliminary injunctions were converted into determinations of whether permanent injunctions should issue uniformly indicate that the parties must be put on notice that a consolidation of trial on the merits with a hearing on a motion for a preliminary injunction is to be ordered, either before the hearing begins or at a time which will still afford the parties a full opportunity to present their respective cases.[3] These

3. *See, e.g., Woe v. Cuomo,* 801 F.2d 627 (2d Cir.1986); *Gellman v. State of Maryland, supra; Am.Fed'n of Gov't Employees, Local 3319 v. Colburn,* 531 F.2d 314 (5th Cir.1976) (per curiam); *Penn v. San Juan Hosp., Inc.,* 528 F.2d 1181 (10th Cir.1975); *Pughsley v. 3750 Lake Shore Drive Coop. Bldg.,* 463 F.2d 1055 (7th Cir.1972); *Eli Lilly & Co. v. Generix Drug Sales, Inc.,* 460 F.2d 1096 (5th Cir.1972); *T.M.T. Trailer Ferry, Inc. v. Union De Tronquistas P.R. Local 901,*

cases point out that to do otherwise requires the petitioning party to face a Hobson's choice; to either forego discovery in order to seek immediate relief, or forego a prompt application for an injunction in order to prepare adequately for trial. Appellant faced a similar choice: forego discovery in order to gain possession of the assets at once, or engage in discovery and risk depletion of the accounts.

In allowing the trial court to determine ownership of the accounts based on an incomplete presentation of witnesses and facts, the majority gives short shrift to the commendable policy reasons underlying our decision in *Davis v. Altmann, supra.* Joint accounts are extremely useful for the elderly or ill who, with the passage of time, become less mobile or less able to manage their own finances. Such accounts allow another person to deposit and withdraw money from the original depositor's account for the well being of the original depositor. The convenience of such accounts would be greatly diminished if the mere listing of a second name on the account was sufficient to vest unconditional ownership in the second person when the depositor is no longer able to speak to intent. It is for this reason that we held in *Davis v. Altmann,* that, where a party opens a joint account for himself (or herself) and another, the account is presumed open for the convenience of that party. The presumption of convenience operates to ensure that a caretaker can administer a depositor's finances without running a risk that a court of law will lightly construe the depositor as a donor with present intent to give the accounts to the caretaker.

In allowing the trial court to determine Kate Presgrave made an *inter vivos* gift of the $55,965.21 to Robert Stephens after a show cause hearing, the majority does not afford the presumption the weight it deserves. The question of intent here is a close one. I cannot accede to the majority's conclusion that the trial court's proceeding to the question of ownership despite the lack of full discovery and notice is harmless (procedural) error. At the very least, the action by the trial court in the instant case—consolidating the show cause hearing and trial without notice—should be disapproved. While I would not overturn the trial court's determination that appellee presented sufficient evidence to sustain his burden of proof as to temporary possession, which is what the show cause hearing was meant to establish, I would remand for a full trial on the merits to establish legal title in the assets. I respectfully dissent.

*supra; Nationwide Amusements, Inc. v. Nattin,* 452 F.2d 651 (5th Cir.1971); *Puerto Rican Farm Workers ex rel. Vidal v. Eatmon,* 427 F.2d 210 (5th Cir.1970) (per curiam); *Capital City Gas Co. v. Phillips Petroleum Co.,* 373 F.2d 128 (2nd Cir.1967).